## RICHARD W. PLATT *vs.* HOSEA B. GROVER.

Worcester. Oct. 4. — Nov. 30, 1883. FIELD & W. ALLEN, JJ., absent.

A statute, passed in 1778, incorporated the town of W., and provided that L., residing without the limits of the town as defined, should have the right to join the town with his lands and estates by filing a writing, under his hand, signifying his intention to join the town, with the clerk of the town from which W. was formed, who should transmit an attested copy of the same to the town clerk of W., by whom it should be entered on the records of the town; and that the town of W. should thereafter be empowered to tax the property of L. located therein; and that, until such notification was given to the clerk of the original town, L. should be liable for all taxes assessed upon him by that town. At the trial of a writ of entry to recover a parcel of land formerly owned by L., which had been sold for the non-payment of a tax assessed in 1880 by the town from which W. was formed, and which had been taxed for about a

hundred years previously by the town of W., the record put in evidence showed only a notice from the clerk of the original town to the clerk of W., dated in 1778, that L. had signified to him his intention of joining the town of W. *Held,* that it must be presumed, from long acquiescence, that the statutory requirements had been complied with; and that the right of the original town to tax the land in question had terminated.

WRIT OF ENTRY to recover a parcel of land in Oxford. Plea, *nul disseisin.* The case was submitted to the Superior Court, and, after judgment for the tenant, to this court on appeal, upon agreed facts, the material parts of which appear in the opinion.

*W. W. Rice,* for the demandant.

*W. S. B. Hopkins,* for the tenant.

DEVENS, J. The act incorporating the town of Ward was passed in 1778. 7 Mass. Special Laws, 823. The name of Ward has been changed to Auburn by an act which does not affect the questions here involved. St. 1837, *c.* 14. This act of incorporation contained two peculiar provisions. While it defined the limits of the town, it permitted certain persons named, residing within those limits, to remain as citizens of the other towns from which Ward was formed, and their estates to be accounted as parts thereof, until they should signify their intention of joining with the town of Ward; while other persons named, residing without the limits as defined, were permitted to join themselves with their estates to the town of Ward upon signifying their intention so to do. The first proviso of the act to which we refer is as follows:

"And that if either or any of the persons aforesaid, their respective heirs or assigns, . . . . shall signify their intention of joining with the said town of Ward in all town affairs for the future, and shall by a writing, under his or their hands, to the town clerk of any of the said towns of Worcester, Sutton, Oxford, or Leicester, to which he or they shall then belong, signify the same: such town clerk shall and he hereby is directed immediately to transmit an attested copy of the same to the town clerk of the said town of Ward, who shall record the same in said town's records, and which shall empower the inhabitants of said town of Ward to tax such inhabitants, lands and estate, in all future taxes, as though he or they, his or their said lands and estate, had been set off with the other inhabitants, in this present act included, and shall be subjected to all duties, and

invested with all the privileges, of the said town of Ward in common as the other inhabitants are subjected to, or invested with, and shall be held to pay all such taxes as thereafter shall be so laid upon them; and they shall also be held to pay all such taxes as are or shall be laid upon them by the respective towns of Worcester, Sutton, Oxford, or Leicester, to which they respectively belonged previous to the enacting hereof, at any time before such notification be given to the town clerk of Worcester, Sutton, Oxford, or Leicester, in manner as aforesaid, or to any of them, and not otherwise."

Subsequently, the act provides that Elisha Livermore and others, lying outside the limits of Ward, may join themselves, their lands and estates, with the town of Ward, for the same purposes, " they severally taking the same measures as are hereinbefore laid down in the former proviso," being the proviso above quoted.

The land demanded in this action is that of Elisha Livermore, mentioned in the second proviso. Having been taxed for a great number of years, extending back into the last century, and perhaps to 1779, by the town of Ward or Auburn, it was in 1880 taxed by the town of Oxford; and the tenant seeks to hold it by virtue of his purchase at a tax sale made by authority of the town of Oxford to enforce the tax assessed thereon. The proceedings regarding the levy of the tax, the sale, and the conveyance to the tenant, are not questioned; and the only inquiry is whether this land could properly be taxed in Oxford.

Were the records of each of these towns entirely silent upon the subject of the performance of the specific statutory requirements, by which this estate was to become a part of the territory of the town of Ward, the facts that for a hundred years it has there been taxed, that the residents thereon have voted as citizens there, that there has been no taxation of the estate in Oxford, and that the residents thereon have exercised no rights of citizenship in Oxford, would afford a legal presumption that all the preliminary formalities had been complied with. Where statutory titles depend upon the proceedings from which they are to derive validity, as upon the question whether officers were duly chosen, or assessments legally made, or notifications properly given, it has been held that it may be presumed, after the lapse

of thirty years, that all things were done according to law. *Colman* v. *Anderson*, 10 Mass. 105. *Pejepscut Proprietors* v. *Ransom*, 14 Mass. 145. *King* v. *Little*, 1 Cush. 436.

But the contention of the tenant is, that, even if this be so, the record which appears in the case at bar is conclusive against the presumption thus sought to be established, and proves that the legal and proper steps were not taken to change the residence of Livermore, and transfer his estate to the town of Ward. While this record, which is that of a notice from the town clerk of Oxford to the town clerk of Ward, of May 7, 1778, that Livermore has signified to him his intention of joining the town of Ward, is not indeed the certificate of Livermore, which, according to the statutory requisition, was to be made to the town clerk of Oxford, and an attested copy of which the town clerk of Oxford was to transmit to the town clerk of Ward to be by him recorded, its existence is not in any way inconsistent with the existence of the certificate of Livermore, or with the fact that such certificate was properly recorded, even if the same cannot now be found. It does not therefore destroy the presumption arising from long acquiescence, or show that those steps were not taken which the statute required, even if it fails to prove that they were.

Again, if full force and effect be given to the entry upon the records of the town of Ward, it is shown thereby that Elisha Livermore had given the necessary notice to the town of Oxford of his intention to join the town of Ward, and the presumption derived from long acquiescence is fortified by this entry. Whether, in order that Livermore's estate should be taxed in Ward, it was necessary that an attested copy of his certificate should be transmitted to Ward and be there recorded, or whether this provision was directory only, the right of the town of Oxford to tax ceased upon receiving the notification. If its town clerk failed to transmit the notification to Ward, or the town clerk of Ward failed to record it, whatever the effect of such failure might be on the right of Ward to tax, it could not operate to enable Oxford to continue to do so. The last part of the proviso, as to continued taxation in the original town, made Livermore liable thereto only before such notification should be given to the town of Oxford, "and not otherwise." His liability to Oxford and that of his estate did not depend upon the transmission of the notification

by attested copy. So far as the right of Oxford to tax is concerned, the entry furnishes evidence that this had ceased to exist; and the tenant's only title rests upon his claim that it continued to exist.

Upon the agreed facts, there should be

*Judgment for the demandant.*